IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| MEIRA AVAUNI RAWLINGS, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LANCESOFT, INC.<br><br>Serve registered agent at:<br>National Registered Agents, Inc.<br>160 Mine Lake Ct., Suite 200<br>Raleigh, North Carolina 27615<br><br>Defendant. | Case No.: 1:26-cv-461<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff Meira Avauni Rawlings, individually, and on behalf of all others similarly situated, and for her Class Action Complaint against Defendant LanceSoft, Inc., states:

### BACKGROUND, PARTIES, JURISDICTION AND VENUE

1. Plaintiff Meira Avauni Rawlings ("Ms. Rawlings" or "Plaintiff") brings this case to protect the privacy rights of herself and a class of similarly situated people to whom Defendant, LanceSoft, Inc. ("Defendant"), called despite their phone numbers being registered on the National Do-Not-Call Registry ("DNC List"). Plaintiff brings claims under both the federal Telephone Consumer Protection Act and the North Carolina Telephone Solicitations Act ("NCTSA"), N.C. Gen. Stat. § 75-100, *et seq.*

2. In the early 1990s, Congress enacted the Telephone Consumer Protection Act ("TCPA") to protect consumers' privacy rights, namely, the right to be left alone from unwanted

telemarketing calls. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

3. Following the TCPA, North Carolina enacted similar state-level legislation in 2003: the North Carolina Telephone Solicitations Act ("NCTSA"), N.C. Gen. Stat. § 75-100, *et seq.* Like its federal counterpart, the NCTSA prohibits persons and entities from making telephone solicitations to residential or mobile telephone numbers that appear on the National Do-Not-Call Registry, and provides a private right of action for injunctive relief, monetary damages, or both. *See* N.C. Gen. Stat. §§ 75-102(a); 75-105(b). The NCTSA's protections encompass both voice calls and text messages. N.C. Gen. Stat. § 75-101(9), (12).

4. The problem with receiving unwanted telemarketing communications is a problem that most people in this country, like Ms. Rawlings, frequently face. For example, in the first four months of 2026 alone, approximately 16.1 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited May 5, 2026).

5. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

6. At all times relevant to this Petition, Ms. Rawlings resided in and has been a citizen of Greensboro, North Carolina.

7. Ms. Rawlings brings this action on behalf of herself, and all others similarly situated.

8. Ms. Rawlings is the owner of a phone. The phone number associated with her phone is 336-XXX-4138.

9. Ms. Rawlings uses her phone for residential purposes, namely, to communicate with family members.

10. Ms. Rawlings's phone account is held in her individual name, and not in the name of a business.

11. Ms. Rawlings is a *person* within the meaning of the TCPA and a *telephone subscriber* within the meaning of the NCTSA. *See* 47 U.S.C. § 153(39); N.C. Gen. Stat. § 75-101(11).

12. To obtain solitude from unwanted telemarketing calls, Ms. Rawlings registered her phone number, 336-XXX-4138, on the DNC List on June 29, 2021.

13. Defendant is a Virginia corporation that has been in good standing to transact business in North Carolina and nationwide at all times material to this Complaint.

14. Defendant transacts business in North Carolina and throughout the United States.

15. Defendant's LinkedIn page states that its services include "temporary and permanent staffing."

16. On information and belief, Defendant makes a profit by staffing persons in positions for its respective clients.

17. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, a federal statute. This Court has supplemental jurisdiction over Plaintiff's NCTSA claim pursuant to 28 U.S.C. § 1367(a), because that claim is so related to Plaintiff's TCPA

claim that it forms part of the same case or controversy.

18. This Court has subject matter jurisdiction over this dispute under the Class Action Fairness Act, as the parties are minimally diverse, and the amount in controversy exceeds $5 million. *See* 28 U.S.C. § 1332(d)(2).

19. Venue is proper in this Court as Defendant is a resident of the State in which this District is located, and/or a substantial part of the events giving rise to the claim at issue occurred in this venue.

**Defendant's Aggressive Telemarketing**

20. Defendant engages in extensive and harassing telemarketing to market its job placement services.

21. A former employee of Defendant stated about Defendant, "Staffing agency but a proper call center. You need to reach out to unreachable people who don't even pick up the call. . . . Call the US candidates Spam them and then advertise your agency as some certified company!"

22. Ms. Rawlings had never provided prior express written consent, or any form of consent, for Defendant to contact her on her phone.

23. On December 26, 2025, at 12:02 p.m, Defendant sent Ms. Rawlings a text message, stating:

> Hello, this is Sonali from LanceSoft. We're hiring for Technical Production & Assembly Tech position in Whitsett, NC and pay is $17.50/hr on W2, Also shared Job description on your email ID. Let me know if you're available or interested. Thanks!
>
> Reply STOP to cancel. Reply HELP for help.

24. On January 14, 2026, at 6:00 p.m., Defendant sent Ms. Rawlings a text message, stating:

> Hi Chris, we have an (sic) 36-month contract opportunity for a Repair Technician, at Whitsett, NC, paying $16/hr on W2. Would you be interested in learning more. (sic).
>
> Reply STOP to cancel. Reply HELP for help.

25. Ms. Rawlings responded to the text message by stating, “STOP.”

26. Defendant then responded, “You are unsubscribed to texts from Lancesoft, Inc. No more messages will be sent.”

27. Despite Defendant’s suggestion to the contrary, Ms. Rawlings never subscribed to receive such text messages from Defendant, nor did she provide Defendant any form of consent to contact her on her phone.

28. On December 19, 2025, at approximately 12:46 p.m., Defendant called Ms. Rawlings’s phone. The phone number that appeared on Ms. Rawlings’s phone was 571-678-0092. Ms. Rawlings’s phone also identified the caller as “LanceSoft, Inc.” and that the call originated from a valid phone number.

29. On December 26, 2025, at approximately 12:02 p.m., Defendant called Ms. Rawlings’s phone. The phone number that appeared on Ms. Rawlings’s phone was 571-678-1629. Ms. Rawlings’s phone also identified the caller as “LanceSoft, Inc.” and that the call originated from a valid phone number.

30. On January 20, 2026, at approximately 11:34 a.m., Defendant called Ms. Rawlings’s phone. The phone number that appeared on Ms. Rawlings’s phone was 571-678-0265. Ms. Rawlings’s phone also identified the caller as “LanceSoft, Inc.” and that the call originated from a valid phone number.

31. On January 21, 2026, at approximately 4:21 p.m., Defendant called Ms. Rawlings’s phone. The phone number that appeared on Ms. Rawlings’s phone was 571-678-0265. Ms.

Rawlings's phone also identified the caller as "LanceSoft, Inc." and that the call originated from a valid phone number.

32. On February 9, 2026, at approximately 2:10 p.m., Defendant called Ms. Rawlings's phone. The phone number that appeared on Ms. Rawlings's phone was 571-678-0683. Ms. Rawlings's phone also identified the caller as "LanceSoft, Inc." and that the call originated from a valid phone number.

33. On February 9, 2026, at approximately 2:10 p.m., Defendant called Ms. Rawlings's phone. The phone number that appeared on Ms. Rawlings's phone was 571-678-0683. Ms. Rawlings's phone also identified the caller as "LanceSoft, Inc." and that the call originated from a valid phone number.

34. On February 9, 2026, at approximately 2:17 p.m., Defendant called Ms. Rawlings's phone. The phone number that appeared on Ms. Rawlings's phone was 571-678-1627. Ms. Rawlings's phone also identified the caller as "LanceSoft, Inc." and that the call originated from a valid phone number.

35. On February 9, 2026, at approximately 2:18 p.m., Defendant called Ms. Rawlings's phone. The phone number that appeared on Ms. Rawlings's phone was 571-678-1627. Ms. Rawlings's phone also identified the caller as "LanceSoft, Inc." and that the call originated from a valid phone number.

36. On February 9, 2026, at approximately 2:29 p.m., Defendant called Ms. Rawlings's phone. The phone number that appeared on Ms. Rawlings's phone was 571-678-0023. Ms. Rawlings's phone also identified the caller as "LanceSoft, Inc." and that the call originated from a valid phone number.

37. On February 9, 2026, at approximately 2:30 p.m., Defendant called Ms. Rawlings's phone. The phone number that appeared on Ms. Rawlings's phone was 571-678-0023. Ms. Rawlings's phone also identified the caller as "LanceSoft, Inc." and that the call originated from a valid phone number.

38. On February 9, 2026, at approximately 2:33 p.m., Defendant called Ms. Rawlings's phone. The phone number that appeared on Ms. Rawlings's phone was 571-678-0956. Ms. Rawlings's phone also identified the caller as "LanceSoft, Inc." and that the call originated from a valid phone number. Ms. Rawlings told Defendant to stop calling her during this call.

39. Ms. Rawlings believes that Defendant called her at least an additional 50 times in addition to those calls identified in this Complaint.

40. Ms. Rawlings answered some of the calls identified in this suit and those not identified. During those calls the caller would advise they could place her with a job and asked for her resume. Notably, Ms. Rawlings has been a stay-at-home mother for many years and is not looking for employment.

41. On information and belief each of the calls (including texts which are considered calls under the TCPA) placed to Ms. Rawlings and the putative class members were placed for the purpose of Defendant attempting to solicit Ms. Rawlings and the putative class members to use its services.

42. Other consumers have also made numerous complaints about Defendant's incessant telemarketing practices.

43. One consumer complained, "This Lance Soft company has harassed me since 2024. . . . I am tired of this company calling me and I'm to the point where I'm getting angrier by the day. . . ."

44. Defendant responded to this complaint by stating, " . . . To prevent future communications, we have submitted your information to our IT department to have your information removed from our systems. . . ."

45. Another consumer complained, "I have called them back at least 4 times asking them to put me on their do not call list, but they keep calling me from different phone number[s] with area code 571. I have replied STOP to their text messages at least 10 times and they continue to text me. . . ."

46. Defendant responded to this complaint by stating, " . . . To prevent future communications, we have submitted your information to our IT department to have your information removed from our systems. . . ."

47. Another consumer complained, "I have politely requested to be removed from their contact list. I have made it clear that I am not searching for a job or a contract. I have never filed a request for them to contact me. I have told them if they call again I will file harassment with BBB. That did nothing to stop them contacting me via phone or text. . . . STOP CONTACTING ME PLEASE. . . ."

48. Defendant responded to this complaint by stating, " . . . To prevent future communications, we have submitted your information to our IT department to have your information removed from our systems. . . ."

49. Another consumer complained, " . . . I have repeatedly blocked their numbers only to have them call me from another number or even text me; and if that doesn't work, they email me. I feel like I am being harassed and am getting close to changing my number. I am on the Do Not Call registry which does not seem to matter."

50. On information and belief, Defendant attempted to call Plaintiff and the putative class members for the purpose of selling its products and services.

51. Defendant's conduct violated the privacy rights of Plaintiff and the putative class members, as they were subjected to annoying and harassing phone calls. Defendant's phone calls intruded upon the rights of Plaintiff and the putative class members to be free from invasion of their interest in seclusion.

52. Defendant's conduct caused Plaintiff and the putative class members to waste time addressing and/or otherwise responding to the unwanted calls.

53. On information and belief, Defendant placed calls to Plaintiff and the putative class members for the purpose of selling its products and services.

## Class Allegations

54. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this lawsuit as a class action on behalf of herself, and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

55. Plaintiff seeks to represent the following classes:

> **National DNC Class:** All persons in the United States who from four years prior to the filing of this lawsuit, through the date of class certification: (1) who were called by or on behalf of Defendant two or more times in a twelve-month period; and, (2) whose phone numbers had been registered on the DNC List for more than thirty days.
>
> **NCTSA DNC Class:** All North Carolina telephone subscribers who from four years prior to the filing of this lawsuit, through the date of class certification: (1) were called by or on behalf of Defendant; and (2) whose telephone numbers had been registered on the National Do-Not-Call Registry for more than thirty days at the time of the call.

56. Plaintiff reserves the right to add administrative subclasses, or to amend the definition of the proposed class, during the lawsuit proceedings.

57. The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiff reasonably believe that hundreds or thousands of people have been harmed by Defendant's actions. The phone numbers of the members of the proposed class are readily identifiable through records available to Defendant or those acting on its behalf.

58. Most members of the proposed class have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

59. On information and belief, Defendant has called and continues to call people whose phone numbers are on the National Do-Not-Call Registry. It is reasonable to expect that Defendant will continue to place such calls absent this lawsuit.

60. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

a. Whether Defendant placed phone calls to persons whose phone numbers were listed on the National Do-Not-Call Registry;

b. Whether Defendant's conduct violates 47 U.S.C. § 227(c);

c. Whether Defendant's conduct violates N.C. Gen. Stat. § 75-102(a);

d. Whether Defendant's conduct violates the rules and regulations implementing the TCPA; and,

e. Whether Plaintiff and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

61. Plaintiff's claims are typical of the claims of the proposed class members because her claims arise from the same practice that gives rise to the claims of the members of the proposed class and are based on the same legal theories.

62. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiff's interests do not conflict with the interests of the proposed class she seeks to represent. Plaintiff has retained lawyers who are competent and experienced in class action litigation, TCPA litigation and consumer law.

63. Plaintiff's counsel will vigorously litigate this case as a class action, and Plaintiff and her counsel are aware of their responsibilities to the putative members of the class and will discharge those duties.

64. A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

65. In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

66. Questions of law and fact, particularly the propriety of placing telemarketing phone calls to persons whose phone numbers are on the National Do-Not-Call Registry, predominate over questions affecting only individual members.

67. Defendant has acted or refused to act on grounds that apply generally to the class, making final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

**Count I - Violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c) – Do-Not-Call Registry Violations.**

68. Plaintiff incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

69. The TCPA provides that "a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may recover $500 for each violation, and up to $1,500 for each violation, if the violation is determined to be willful. *See* 47 U.S.C. §§ 227(c)(5).

70. The TCPA provides that is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one call on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

71. In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA and the TCPA's regulations prohibiting calls to phone numbers that are registered on the National Do-Not-Call Registry. *See* 47 U.S.C. §§ 227(c)(5)(A).

72. By placing phone calls to the phones of Plaintiff and the putative class members after their numbers were registered on the National Do-Not-Call Registry, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c) and the TCPA's corresponding regulations.

73. Defendant knew or should have known that Plaintiff and the putative class members did not wish to receive phone calls as such persons' phone numbers were registered on the National Do-Not-Call Registry.

74. Plaintiff and the putative class members are entitled to damages of $500.00 per violation for each call placed to them in violation of the TCPA and up to $1,500.00 per violation if the Court finds that Defendant willfully violated the TCPA.

**Count II – Violations of the North Carolina Telephone Solicitations Act ("NCTSA"), N.C. Gen. Stat. § 75-102(a) – Do-Not-Call Registry Violations.**

75. Plaintiff incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

76. Defendant LanceSoft, Inc. is a *telephone solicitor* under the NCTSA. *See* N.C. Gen. Stat. § 75-101(10).

77. Plaintiff is a *telephone subscriber* under the NCTSA. *See* N.C. Gen. Stat. § 75-101(11).

78. Each call (including text messages) made by Defendant to Plaintiff and the members of the NCTSA DNC Class is a *telephone solicitation* as defined by the NCTSA. *See* N.C. Gen. Stat. § 75-101(9), (12).

79. It is a violation of the NCTSA to initiate any telephone solicitation to a North Carolina telephone subscriber whose telephone number is registered on the National Do-Not-Call Registry. N.C. Gen. Stat. § 75-102(a).

80. Defendant, and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violated the NCTSA by causing telephone solicitations to be delivered to Plaintiff and the members of the NCTSA DNC Class, despite each member's registration of his or her telephone number on the National Do-Not-Call Registry.

81. As a result of Defendant's violations of the NCTSA, N.C. Gen. Stat. § 75-100 *et seq.*, and/or such violations by affiliates, agents, and/or other persons or entities acting on Defendant's behalf, Plaintiff and the members of the NCTSA DNC Class are entitled to and do seek an award of $500 in damages for the first violation, $1,000 for the second violation, and $5,000 for the third and subsequent violation, in addition to injunctive relief and attorneys' fees and costs, pursuant to N.C. Gen. Stat. § 75-105(b)(1), (b)(2), and (d).

**Demand for Judgment**

WHEREFORE Plaintiff Meira Avauni Rawlings, individually, and on behalf of all others similarly situated, requests the Court grant the following relief:

a. Enter an order against Defendant LanceSoft, Inc. pursuant to Federal Rule of Civil Procedure 23, certifying this action as a class action and appointing Plaintiff as the class representative;

b. Enter an order appointing Plaintiff's counsel as counsel for the class;

c. Enter judgment in favor of Plaintiff and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation of the TCPA, or up to $1,500 per violation of the TCPA if Defendant willfully violated the TCPA;

d. Enter judgment in favor of Plaintiff and the NCTSA DNC Class for all damages available under the NCTSA, including statutory damages of $500 for the first violation, $1,000 for the second violation, and $5,000 for the third and subsequent violation, pursuant to N.C. Gen. Stat. § 75-105(b)(1) and (b)(2);

e. Enter a judgment in favor of Plaintiff and the putative class that enjoins Defendant from violating the TCPA and the TCPA's corresponding regulations prohibiting Defendant from placing phone calls to persons whose phone numbers are registered on the National Do-Not-Call

Registry;

f. Enter a judgment in favor of Plaintiff and the NCTSA DNC Class that enjoins Defendant, pursuant to N.C. Gen. Stat. § 75-105(b)(1), from making telephone solicitations to any North Carolina telephone subscriber whose telephone number is registered on the National Do-Not-Call Registry;

g. Award Plaintiff and the NCTSA DNC Class their reasonable attorneys' fees and costs pursuant to N.C. Gen. Stat. § 75-105(d);

h. Award Plaintiff and the class all expenses of this action, and require that Defendant pay the costs and expenses of class notice and administration;

i. Award Plaintiff and the class their court costs, and all applicable pre- and post-judgment interest; and,

j. Award Plaintiff and the class such further and other relief the Court deems just and appropriate.

**DEMAND FOR JURY TRIAL**

Please take notice that Plaintiff demands a jury trial in this case.

This the 20th day of May, 2026.

Respectfully submitted,

BY:*/s/ Karl S. Gwaltney*

Karl S. Gwaltney
Maginnis Howard
N.C. State Bar No. 45118
7706 Six Forks Road, Suite 101
Raleigh, NC 27615
Telephone: 919-526-0450
Fax: 919-882-8763
kgwaltney@carolinalaw.com

Local Civil Rule 83.1(d) Counsel for Plaintiff

*Christopher E. Roberts* (notice of special appearance forthcoming)
M.O. State Bar No. 61895
**BUTSCH ROBERTS & ASSOCIATES LLC**
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Telephone: (314) 863-5700
E-mail: croberts@butschroberts.com

*Counsel for Plaintiff*