**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**GREENSBORO DIVISION**

| | | |
|---|---|---|
| MEIRA AVAUNI RAWLINGS, individually, and on behalf of all others similarly situated, | ) | |
| Plaintiff, | ) | Civil Action No. 1:26-cv-461 |
| v. | ) | |
| LANCESOFT, INC., | ) | |
| Defendant. | ) | |

# DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND INCORPORATED BRIEF

Defendant LanceSoft, Inc. ("LanceSoft") is an employment recruiting firm. Plaintiff's First Amended Complaint ("FAC") asserts four counts under the federal Telephone Consumer Protection Act ("TCPA") and the North Carolina Telephone Solicitations Act ("NCTSA"): Count I (TCPA national Do-Not-Call Registry), Count II (TCPA internal Do-Not-Call procedures), Count III (NCTSA national Do-Not-Call Registry), and Count IV (NCTSA internal Do-Not-Call procedures) (Doc. 16). Those provisions apply only to telephone solicitations or telemarketing, which Plaintiff's own quoted communications show did not occur here. LanceSoft therefore moves to dismiss the FAC under Fed. R. Civ. P. 12(b)(6) and M.D.N.C. LR 7.2(a), and to strike the class allegations.

## STATEMENT OF FACTS

Plaintiff is a resident of North Carolina who alleges that she owns a phone used primarily for residential purposes, that her account is held in her individual name, and that she registered the number on the National Do-Not-Call Registry on June 29, 2021 (Doc. 16 ¶¶ 6, 8-12). LanceSoft is a for-profit staffing agency whose corporate and government clients allegedly pay it to recruit, screen, and supply workers (*Id.* ¶ 21). Plaintiff alleges that LanceSoft is paid for each hour a placed candidate works, through the difference between a client's bill rate and the candidate's pay rate, and that LanceSoft's contracts use markups or commissions to compensate it (*Id.* ¶¶ 22-27).

Plaintiff relies on Commonwealth of Massachusetts Statewide Contract ITS77 as an example, alleging that its "Bill Rate" is the client charge and its "Pay Rate" is the worker's direct pay (*Id.* ¶ 24). She also relies on Detroit Public Schools Community District Contract No. 21-0012-C, alleging that the client pays the placed worker's wages plus a fixed markup (*Id.* ¶ 26).

Plaintiff alleges that LanceSoft earns more when its recruiting is the source of a candidate and that every dollar of its fee is a dollar the candidate would otherwise receive, so candidates effectively pay for placement services through reduced wages (Doc. 16 ¶¶ 27, 31-34).

Plaintiff alleges she never consented to contact, had no established business relationship with LanceSoft, was never its customer, never applied or inquired about employment or placement, and never provided her number to LanceSoft (*Id.* ¶¶ 37-38). She alleges that, despite this, LanceSoft sent her unwanted text messages even after she opted out (*Id.* ¶¶ 39-42). She also alleges receiving unwanted telephone calls from LanceSoft (*Id.* ¶¶ 44-54). According to Plaintiff, these texts and calls were made with a "marketing purpose" because LanceSoft earns a profit from placing job seekers (*Id.* ¶¶ 57-60).

Plaintiff proposes four classes: (1) a National DNC Class of all residential telephone subscribers in the United States who, during the period beginning four years before the filing of this lawsuit and continuing through class certification, received more than one telephone solicitation call or text message from or on behalf of LanceSoft in a 12-month period while their numbers had been on the National DNC Registry for more than 30 days; (2) a North Carolina DNC Class of all North Carolina telephone subscribers who received a telephone solicitation call or text message while their numbers had been registered for more than 30 days; (3) a National Internal DNC Class of all persons who received more than one telemarketing call in a 12-month period after communicating a request for no further telemarketing calls; and (4) a North Carolina Internal DNC Class of all North

Carolina telephone subscribers who received a telemarketing call after communicating such a request (*Id.* ¶ 77).

## QUESTIONS PRESENTED

I. Whether communications offering employment opportunities and asking whether a recipient is available or interested are "telephone solicitations" or "telemarketing" merely because LanceSoft earns revenue when it places workers with clients?

**Answer: No.**

II. Whether the First Amended Class Action Complaint should be dismissed with prejudice because all four counts depend on an alleged telephone solicitation or telemarketing communication, and the pleaded communications do not meet those definitions?

**Answer: Yes.**

**III.** Alternatively, whether Plaintiff's four proposed classes should be stricken because their definitions depend on merits and individualized determinations?

**Answer: Yes.**

## LEGAL STANDARDS

The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the complaint. *DeSole v. United States*, 947 F.2d 1169, 1178 (4th Cir. 1991). The question on a motion to dismiss is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted. *Scheuer v. Rhodes*, 416 U.S. 232 (1974), *overruled on other grounds*, *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). If it appears that a plaintiff is not entitled

to relief under the stated facts, dismissal is proper. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991).

While a court ruling on a motion under Rule 12(b)(6) must accept all well-pleaded factual allegations as true and must construe the facts in the light most favorable to the plaintiff, a "pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" must be dismissed. *Id.*

## ARGUMENT

### I. The Court Must Dismiss Because the Fact LanceSoft Earns Profits from Doing Business Does Not Make it a Telemarketer Under the TCPA.

The FAC alleges that LanceSoft violated 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2) by placing telephone solicitations to Plaintiff and the National DNC Class, and violated 47 C.F.R. § 64.1200(d) through alleged failures concerning internal do-not-call procedures (Doc. 16 ¶¶ 90-106). It asserts parallel NCTSA claims under N.C. Gen. Stat. § 75-102(a) and § 75-102(b) (*Id.* ¶¶ 107-122). These allegations fail to state a claim as a matter of law because Section 227(c)(5) does not apply to text messages and because LanceSoft was not engaged in "telephone solicitations" or "telemarketing" when it called Plaintiff.

A. <u>Section 227(c)(5) of the TCPA does not apply to text messages.</u>

Plaintiff predicates her complaints about receiving text messages on Section 227(c)(5) of the TCPA, 47 U.S.C. § 227(c)(5). The problem for Plaintiff is that Section 227(c)(5) only allows a private right of action for certain types of "telephone call[s]. " *Id.*

In a recent decision from the Seventh Circuit, it held that the plain language of Section 227(c)(5) did not apply to text messages. *Steidinger v. Blackstone Medical Services*, No. 25-2398, 2026 WL 2028517, at *4-5 (7th Cir. July 14, 2026). There, the court systematically deconstructed arguments to the contrary. It contrasted other portions of Section 227(c) that used "telephone solicitation" instead of "telephone call," which created an inference Congress intended a different meaning when allowing for a private right of action. *Id.* at *6-9. It noted the Supreme Court has not resolved the issue, and that contrary circuit decisions involved different portions of the TCPA and were based on precedent that was later clarified to not, in fact, be precedent. *Id.* at *9-10. The Court analyzed the TCPA's implementing regulations and noted they did not alter the meaning of a "telephone call" under Section 227(c)(5) to include text messages. *Id.* at *10-12.

The Court also examined Congress's actions in amending the TCPA and found there was no basis to assume Congress intended to adopt regulatory language making

a text message part of a telephone call or that Section 227(c)(5) contained the same language as other parts of the TCPA such that it could be presumed Section 227(c)(5) was intended to cover text messages. *Id.* at *12-15. And the court concluded the broad remedial nature of the TCPA and Congressional intent did not indicate Section 227(c)(5) was directed towards text messages. *Id.* at *15-16.

This decision reaches a correct decision after a thorough analysis. LanceSoft respectfully submits the decision is therefore highly persuasive and urges this Court to adopt its reasoning.

B. <u>LanceSoft is not a telemarketer</u>.

Even assuming Section 227(c)(5) covers text messages, all of Plaintiff's allegations are not covered by the TCPA because LanceSoft is a staffing firm and not a telemarketer, as it previously argued in its initial Motion to Dismiss (Doc. 13 at 4-8). Those arguments remain relevant to the FAC, and LanceSoft incorporates them here while only briefly reiterating them for purposes of briefing efficiency.[1]

Courts have repeatedly held that employment-recruitment communications do not constitute telephone solicitations or telemarketing. *See Rockwell v. Medicus Healthcare Sols., LLC*, 2025 U.S. Dist. LEXIS 61080, at *10, *13-14 (W.D.N.Y. Mar. 31, 2025) (dismissing staffing-agency recruitment claims); *Gerrard v. Acara*

[1] The parties stipulated to this procedure when discussing consent to Plaintiff's filing of the FAC.

*Sols., Inc.*, 469 F. Supp. 3d 96, 97, 99 (W.D.N.Y. 2020) (employment-opportunity texts were not advertisements or telemarketing); *Friedman v. Torchmark Corp.*, 2013 U.S. Dist. LEXIS 114321 (S.D. Cal. Aug. 13, 2013) (message informed recipient of independent-contractor opportunity rather than offering goods or services for sale); *Lutz Appellate Servs., Inc. v. Curry*, 859 F. Supp. 180, 181-82 (E.D. Pa. 1994) (a "help wanted" ad is not a property solicitation); *Reardon v. Uber Techs., Inc.*, 115 F. Supp. 3d 1090, 1095-97 (N.D. Cal. 2015) (driver-recruitment texts were not attempts to promote services); *Payton v. Kale Realty, LLC*, 164 F. Supp. 3d 1050, 1061-64 (N.D. Ill. 2016) (recruitment texts did not encourage recipients to purchase services).

That reasoning is directly relevant here. The FAC quotes two messages that offer jobs, identify hourly pay "on W2," ask whether Plaintiff is "available or interested" or "interested in learning more," and include "Reply STOP to cancel" and "Reply HELP for help." (Doc. 16 ¶¶ 39-42). The calls allegedly told Plaintiff that LanceSoft could place her with a job and asked for her resume (*Id.* ¶ 56). None of those communications asks Plaintiff to purchase, rent, or invest in LanceSoft's staffing services, pay a fee, or buy anything. The phrase "on W2" communicates an employment-payroll arrangement; it does not advertise a service for Plaintiff to purchase. Under *Gerrard*, *Rockwell*, *Reardon*, and *Payton*, a staffing firm's effort to

recruit a worker does not become telemarketing merely because the firm's business is commercial.[2]

The FAC attempts to avoid this conclusion by injecting a novel theory. As LanceSoft understands it, Plaintiff's argument is that LanceSoft is encouraging the purchase of its staffing services because the called party, if placed in employment, would pay LanceSoft through a reduction in hourly pay from market rate that LanceSoft collects as a profit.

The problem with this theory is that it is contradicted by the FAC itself. For example, the FAC admits that LanceSoft is paid by its employer clients (Doc. 16 ¶ 22), not any called parties. And the FAC points to several contracts between LanceSoft and its clients, attempting to show a placed candidate's hourly rate is reduced for LanceSoft's services (*Id.* ¶¶ 20-32). But the existence of these contracts between LanceSoft and its clients actually shows that LanceSoft encouraged its clients, not called parties, to purchase services LanceSoft provided to its clients, not called parties. So LanceSoft's "encouraging" for the "purchase" of "services" is documented in writing and not directed at called parties. 47 C.F.R. § 64.1200(f)(15).[3]

---

[2] Plaintiff cannot convert recruiting communications into telephone solicitations merely by labeling LanceSoft's staffing business as a "service."

[3] LanceSoft also has trouble understanding the logic behind Plaintiff's theory, which turns this contractual relationship between LanceSoft and its clients inside out. Under this theory,

Plaintiff tries to show placed candidates provide value to LanceSoft through an attenuated sequence of monetary exchanges (*Id.* ¶¶ 32, 34). As LanceSoft understands the argument, placed candidates provide value to employers through labor and receive value in return through payment from the employers. But LanceSoft also receives value through payment from the employers for a placed candidate's labor, so therefore that labor (and the candidate) must be directly providing value to LanceSoft.

Plaintiff's argument fails. How LanceSoft's clients allocate their resources between paying a placed candidate and paying LanceSoft has nothing to do with LanceSoft's motivations in calling prospective candidates and whether it is a telemarketer under the TCPA. And LanceSoft's profit motive is not the statutory trigger; the TCPA regulates calls whose purpose is to encourage *the called party* to make a purchasing decision, not calls that may incidentally benefit the caller if a third party later pays. Here, an extra-circuit decision is useful. In *Hulce v. Zipongo Inc.*, the court held that "the person or entity the caller intends to encourage [must also be] the party who makes the purchasing decision" for a call to qualify as a telephone solicitation. 132 F.4th 493, 499-500 (7th Cir. 2025). There is no TCPA

---

LanceSoft's "services" pitch to called parties would be for them to earn less for being placed in employment by LanceSoft. This is hardly an "encouragement" to purchase LanceSoft's "services." 47 C.F.R. § 64.1200(f)(15).

violation where a calling party encourages use of services that may later result in payment of a fee to the calling party by someone other than the called party. *Id.* at 500. *Hulce* thus shows profit is not enough, use of a service is not a purchase, and the identity of the purchaser all matter. And all of those factors here point to LanceSoft's alleged communications with Plaintiff not being telemarketing under the TCPA.

Also instructive is *Andersen v. Nexa Mortg., LLC.*, No. 8:24-CV-00619-DOC-ADSx, 2024 U.S. Dist. LEXIS 143293, at *8 (C.D. Cal. Aug. 12, 2024). There, the court held that texts for recruitment were not telephone solicitations under the TCPA and granted dismissal. *Id.* Plaintiff "resist[ed] this conclusion" by arguing the defendant would charge him an administrative fee. *Id.* But the court noted that fee could be passed on to a third party, reinforcing that the purpose of the defendant's call was recruitment, not the encouragement of a purchase of services. *Id.* That same reasoning applies here – the fact LanceSoft makes a profit from placing candidates does not convert its purpose of calling them into telemarketing under the TCPA. The Court should dismiss Counts I and II in their entirety.

C. <u>The NCTSA Counts fail for the same reasons.</u>

Counts III and IV under the NCTSA fail for the same reason. Section 75-102(a) prohibits a telephone solicitor from making a telephone solicitation to a North

Carolina telephone subscriber whose number is on the National Do-Not-Call Registry, while § 75-102(b) prohibits making a telephone solicitation after the subscriber communicates a desire to receive no further solicitations. The related internal-procedure requirements in § 75-102(b)-(d) likewise presuppose a telephone solicitation or telemarketing call.

> A voice or text communication, whether prerecorded, live, or a facsimile, over a telephone line or wireless telephone network or via a commercial mobile radio service that is made by a telephone solicitor to a telephone subscriber for the purpose of soliciting or encouraging the purchase or rental of, or investment in, property, goods, or services; obtaining or providing information that will or may be used for that purpose; soliciting or encouraging a telephone subscriber's participation in any contest, sweepstakes, raffle, or lottery, whether legal or illegal; or obtaining a charitable donation.

"The NCTSA definition is almost identical to the TCPA's." *Davis v. Reliance First Capital, LLC*, No. 7:22-CV-00018, 2023 U.S. Dist. LEXIS 24055, at *9 (E.D.N.C. Feb. 13, 2023). The North Carolina statute therefore turns on whether the communication was meant to elicit a business transaction involving the recipient and the caller. Here, as in the federal analysis, the FAC does not allege that LanceSoft asked Rawlings to buy or pay for a service. Its theory instead depends on a later placement, client payment, and reduced wage. That is a remote and conclusory chain that does not turn the quoted job-recruitment messages into telephone solicitations. Counts III and IV should therefore be dismissed.

## II. Alternatively, the Court Should Strike Plaintiff's Fail-safe Classes.

The FAC proposes four classes defined by merits-dependent concepts. The National DNC and North Carolina DNC Classes require receipt of a "telephone solicitation" call or text message; the internal DNC classes require receipt of a "telemarketing" call after a legally effective request to receive no further such communications (Doc. 16 ¶¶ 76-78). Those phrases are not merely descriptive. They incorporate the central liability questions in this action.

A. <u>The proposed classes are impermissible fail-safes.</u>

Rule 12(f) permits a court to strike redundant, immaterial, impertinent, or scandalous matter, and Rule 23(d)(1)(D) authorizes an order requiring pleadings to be amended to eliminate allegations about representation of absent persons. Although early striking is an exceptional remedy, it is appropriate where the face of the complaint demonstrates that class treatment cannot be maintained and no amount of discovery can cure the defect. *See Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 615-16, 623-26 (E.D. Pa. 2015).

Each proposed class is fail-safe. A fail-safe class is one that "is defined so that whether a person qualifies as a member [of the class] depends on whether the person has a valid claim." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 n.9 (4th Cir. 2014). Here, to determine membership, the Court would first have to decide whether the

challenged calls or texts were "telephone solicitations" or "telemarketing," the central liability issue in Counts I through IV. It would also have to decide whether the alleged communication was legally actionable under the TCPA or NCTSA, including whether the recipient was a covered residential or North Carolina telephone subscriber, whether the number had been registered for the required period, whether the recipient communicated a qualifying do-not-call request, whether the request applied to the number and entity at issue, and whether any post-request communication occurred.

If the Court concludes that the quoted job-recruitment communications are not telephone solicitations or telemarketing, the proposed classes contain no members for those communications; if the Court concludes otherwise, those same merits determinations define who is in the classes. Thus, a person is in the proposed class only if Plaintiff proves the merits of that person's claim. That is the classic fail-safe defect: either the class members win, or, if the defense prevails, they are defined out of the class and are not bound by the judgment. *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825-26 (7th Cir. 2012).

The problem is not cured by Plaintiff's use of objective-sounding terms such as "received," "registered," or "communicated." The National DNC classes require

a merits determination about the purpose and legal character of every communication, and the internal DNC classes require a merits determination about whether a request was legally effective and whether the later contact was a covered telemarketing call. Where, as here, class membership likewise depends on resolution of the defendant's liability, the proposed class is a fail-safe that must be stricken.

B. The proposed classes are not ascertainable and cannot be tried collectively.

The proposed classes also fail the Fourth Circuit's ascertainability requirement. A class must be readily identifiable by objective criteria and administratively feasible to determine; if identifying members requires extensive individualized fact-finding or mini-trials, class treatment is inappropriate. *Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*, 91 F.4th 202 (4th Cir. 2024); *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014).

Here, LanceSoft's records may show that a number was contacted, when the contact occurred, and perhaps which campaign or sender was used. They do not resolve the individualized questions embedded in the definitions: whether each recipient was a residential subscriber rather than a business user; whether the number was on the National Registry for more than 30 days; what the communication actually said and whether its purpose was recruitment or solicitation; whether the communication was made by or on behalf of LanceSoft; whether a person made a

qualifying request, to whom, and when; whether the request covered calls, texts, or both; whether a later contact occurred after the request; and whether the later contact was legally actionable under the applicable statute. Those inquiries require message-by-message and person-by-person review, including individualized testimony where records are incomplete.

The internal classes are particularly unmanageable because a "STOP" response to a text and a request to stop calls are not necessarily the same request, and the FAC alleges that Rawlings received an automated text confirmation but then allegedly received calls. Determining the scope, timing, and legal effect of each recipient's request would create the very mini-trials Rule 23 is meant to avoid. *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259 (11th Cir. 2019) (vacating certification where determining whether each class member asked the defendant to stop calling required individualized inquiry); *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 328-29 (5th Cir. 2008) (class treatment unavailable where consent and liability required individualized inquiries).

This request does not contend that TCPA claims are categorically unavailable in a class action. The Fourth Circuit has affirmed that ascertainability is a real requirement, and its TCPA class-certification decisions do not dispense with it. *See Career Counseling*, 91 F.4th 202; *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643,

654-55, 658 (4th Cir. 2019).

Nor can invocation of Rule 23(b)(2) avoid these defects. The FAC seeks individualized statutory damages for each alleged violation, and individualized monetary claims belong under Rule 23(b)(3), with its predominance, superiority, notice, and opt-out safeguards. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360-62 (2011). Although *Messner* observed that some fail-safe defects may be addressed by refining a class definition, 669 F.3d at 825, refinement cannot remove the central questions here without changing the claims Plaintiff pleads. No database can determine from call logs alone whether the communication was a telephone solicitation, whether the recipient was a covered subscriber, or whether an opt-out was legally effective. *E.g.*, *EQT Prod. Co.*, 764 F.3d at 366 ("Even a plethora of identical practices will not satisfy the predominance requirement if the defendants' common conduct has little bearing on the central issue in the litigation…."). The class allegations should therefore be stricken rather than deferred to discovery.

For these reasons, and in the alternative to dismissal of all four counts, LanceSoft respectfully requests that the Court strike the class allegations under Fed. R. Civ. P. 12(f) and 23(d)(1)(D).

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court enter an order dismissing all four counts of Plaintiff's FAC with prejudice pursuant to Fed. R. Civ. P. 12(b)(6). Defendant further requests that the Court alternatively strike Plaintiff's class allegations pursuant to Fed. R. Civ. P. 12(f) and 23(d)(1)(D).

Dated this 2nd day of September, 2026.

Respectfully submitted,

JACKSON LEWIS P.C.

200 Connell Drive, Suite 2000
Berkeley Heights, NJ 07922
908-795-5200

By: *__/s/ Luke P. Breslin__*
Luke P. Breslin*
**Admitted by special appearance*
New Jersey Bar No. 029222010
Luke.Breslin@jacksonlewis.com

*__/s/ Justine Tate__*
Justine Tate
North Carolina Bar No. 54376
3737 Glenwood Avenue, Suite 450
Raleigh, NC 27612
919-760-6443
Justine.Tate@jacksonlewis.com

*/s/ Jeffrey S. Wilson*
Jeffrey S. Wilson*
**Admitted by special appearance*
Georgia Bar No. 119898
171 17th Street, NW, Ste. 1200
Atlanta, GA 30361
404-586-1803
Jeff.Wilson@jacksonlewis.com

*Attorneys for Defendant*

## CERTIFICATE OF WORD COUNT

I certify that this Memorandum complies with the word count limit set forth in M.D.N.C. LR 7.3(d). The number of words in this Memorandum, exclusive of the caption, signature lines, certificate of service, certificate of word count, and any cover page or index, does not exceed 3,759 words, according to the word count function of the word processing software used to prepare the Memorandum.

Dated this 2nd day of September, 2026.

By: */s/ Luke P. Breslin*
Luke P. Breslin

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**GREENSBORO DIVISION**

| | | |
|---|---|---|
| MEIRA AVAUNI RAWLINGS, individually, and on behalf of all others similarly situated, | ) | |
| Plaintiff, | ) | Civil Action No. 1:26-cv-461 |
| v. | ) | |
| LANCESOFT, INC., | ) | |
| Defendant. | ) | |

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on September 2, 2026, I electronically filed the foregoing using the Court's CM/ECF system, which will send notice of electronic filing to the following counsel of record:

| | |
|---|---|
| Karl S. Gwaltney<br>N.C. State Bar No. 45118<br>Maginnis Howard<br>7706 Six Forks Road, Ste. 101<br>Raleigh, NC 27615<br>Telephone: 919-526-0450<br>Fax: 919-882-8763<br>kgwaltney@carolinalaw.com<br>*Attorney for Plaintiff* | Christopher E. Roberts, Esq.*<br>* *Special Appearance per L.R. 83.1(d)*<br>M.O. Bar No: 61895<br>Butsch Roberts & Associates LLC<br>7777 Bonhomme Avenue, Suite 1300<br>Clayton, Missouri 63105<br>Raleigh, NC 27604<br>Telephone: (314) 863 5700<br>croberts@butschroberts.com<br>*Attorney for Plaintiff* |

By: */s/ Luke P. Breslin*
Luke P. Breslin
200 Connell Drive, Suite 2000
Berkeley Heights, NJ 07922
908-795-5200